**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CHARYS SANABRIA                              :
8 Kramer Ave.                                :      CIVIL ACTION
Oil City, PA 16301                           :
                                             :      CASE NO.: _____
              Plaintiff,                     :
                                             :
       v.                                    :      **JURY TRIAL DEMANDED**
                                             :
EASTER SEALS WESTERN                         :
AND CENTRAL PA                               :
875 Greentree, B6, Suite 150                 :
Pittsburgh, PA 15220                         :                    :
                                             :
              Defendant.                     :
                                             :

**CIVIL ACTION COMPLAINT**

Plaintiff, Charys Sanabria (hereinafter referred to as "Plaintiff" unless indicated otherwise), hereby complains as follows against Easter Seals Western and Central PA, and avers as follows:

**INTRODUCTION**

1.     Plaintiff initiates the instant action to redress violations by Easter Seals Western and Central PA (hereinafter "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e *et. seq.*); Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981); and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff will move to amend her instant lawsuit to include claims under the Pennsylvania Human Relations Act once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission. Any claims under the PHRA though would mirror her instant claims.

## JURISDICTION AND VENUE

2.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims, because this civil action arises under a law of the United States.

3.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny. This Court has supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a citizen of the Western District of Pennsylvania.

5.      Plaintiff is proceeding herein (in part) under Title VII and has properly exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.    Defendant is a non-profit organization that provides programs and services to 47 counties in Pennsylvania for people with disabilities or other special needs.

9.    At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

10.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.    Plaintiff is a Hispanic/Latina woman with limited English proficiency and speaks with a noticeable accent.

12.    Plaintiff was hired by Defendant on or about February 3, 2023, where she worked as a Residential Program staff member until her unlawful termination on or about June 26, 2024 (discussed *infra)*.

13.    Plaintiff's duties included but were not limited to cleaning up after clients, bathing clients, driving clients to and from appointments, and assisting clients with medication management.

14.    At all times relevant herein, Plaintiff was supervised by her manager, Robin Morton (hereinafter "Morton," Caucasian) and indirectly overseen by Defendant's Program Director, Tiffany Morrow (hereinafter "Morrow," Caucasian).

15.    While working for Defendant, Plaintiff was a dedicated and hardworking employee who performed her job well.

16.    Towards the end of her employment with Defendant, Plaintiff began to be subjected to discriminatory treatment based on her race by Residential Program Staff, Kristie Montgomery (Caucasian – hereinafter "Montgomery").

17.    For example, Montgomery would harassed Plaintiff, called her names, and cursed at her.

18.    There were several occasions where Plaintiff used Google-Translate while Montgomery was talking so she would fully understand what Montgomery was saying.

19.    Plaintiff learned from the translations that Montgomery was making fun of her accent, her inability to speak fluent English, and was calling her "stupid" and "slow."

20.    Plaintiff reported Montgomery's discriminatory behavior to Morrow in or about June of 2025; however, Morrow did not investigate Plaintiff's complaints, which only encouraged Montgomery's behaviors to persist.

21.    In addition to Montgomery's overt discriminatory harassment, Plaintiff also observed throughout her employment that Caucasian employees were treated more favorably than minority employees by Defendant's management.

22.    For example, throughout Plaintiff's tenure, she witnessed Defendant terminate numerous non-Caucasian employees within a few months of hire for fabricated or minor policy violations after the first violation. However, Defendant either used progressive discipline for Caucasian employees or simply did not discipline them at all (despite their violations of company policy, such as taking frequent and long breaks, neglecting their work, and engaging in other blatant misconduct).

23.    In or about July 2024, a male employee Rodney Wagonner (Caucasian – hereinafter "Wagonner"), called Plaintiff over to a room, made a comment to the effect of "I can touch you" and then made a vulgar motion as if he was smacking Plaintiff's rear side.

24.    Plaintiff immediately complained to Defendant about what she reasonably believed was sexual harassment and also filed a police report.

25.    In response, Morrow called Plaintiff a liar and even threatened to write her up for violating Defendant's privacy policy by making a police report.

26.    Wagonner remained employed by Defendant because Defendant claims that after interviewing Wagonner regarding Plaintiff's complaint "it appeared plausible that Ms. Sanabria's allegations may be a result of a language barrier or miscommunication, as was the case when Ms. Sanabria previously complained about a co-worker [Montgomery]."

27.    Defendant has thus used Plaintiff's language barrier as a way to dismiss not only her complaint of racial discrimination against Montgomery, but her sexual harassment complaint against Wagonner.

28.    In short, Defendant created an environment where Caucasian employees felt comfortable harassing Plaintiff without fear of repercussions.

29.    In addition to the aforesaid race discrimination and sexual harassment, Plaintiff was also subjected to religious discrimination by Marrow.

30.    At the beginning of her employment with Defendant, Plaintiff practiced the Mormon religion and attended The Church of Jesus Christ of Latter Day Saints (LDS).

31.    Morrow and her father, Daniel Butler, also belonged to the same LDS church.

5

32.     Approximately ten (10) months prior to Plaintiff's termination from Defendant, Morrow began to harass Plaintiff while at church and started arguments with her in front of other church members.

33.     Due to Morrow's hostility and other religious teachings with which Plaintiff did not agree, Plaintiff and her husband left the Mormon religion and the LDS church that her and Morrow attended together.

34.     After leaving the Mormon religion and the LDS church, Plaintiff's religious beliefs changed and she began to practice the evangelical part of the Universal Christian Church at a new church that practices the same.

35.     After changing her religion/religious beliefs and her church, Morrow grew increasingly aggressive towards Plaintiff at work, including but not limited to speaking to Plaintiff abruptly, ignoring any concerns that Plaintiff brought to her attention (including the aforesaid concerns of race discrimination and sexual harassment), and attempting to find reasons to terminate Plaintiff's employment.

36.     On or about July 25, 2024, shortly following her complaints of racial discrimination and sexual harassment (which were clearly ignored), Plaintiff's son became ill and she was required to take him to the Emergency Room (ER).

37.     Because Plaintiff was attending to her ill son in the ER, Plaintiff's husband called Defendant's management at least two (2) hours prior to her shift to inform them that Plaintiff was in the ER with their sick son, that she would be absent from work that day, and offered to provide a physician's note regarding Plaintiff's absence.

38.     The following day, Plaintiff received a call from Defendant's management terminating her employment.

39.     The reasons listed for Plaintiff's termination included failure to follow proper protocol for calling off, which is completely untrue.

40.     Additionally, Defendant alleged she had been sleeping on the job and failing to finish assignments, which are accusations that Plaintiff's vehemently denies.

41.     Later, in Defendant's position statement to the EEOC (submitted in response to Plaintiff's EEOC charge), Defendant admits that it never issued Plaintiff any written discipline prior to her termination for failure to finish assignments or for sleeping on the job.

42.     Instead, Defendant conveniently asserts that it had intended to issue Plaintiff a write up on July 25, 2024, but that Plaintiff had called out of work for her son's illness and therefore the meeting to issue Plaintiff the aforesaid disciplinary action was postponed until July 26, 2024.

43.     Notably though, Defendant does not indicate in its position statement that it terminated Plaintiff for failing to finish assignments, sleeping on the job, or any other performance issues.

44.     Instead, Defendant asserts that it only made the decision to terminate Plaintiff after she provided a doctor's note supporting her absence on July 25, 2024 because Defendant ***assumed*** that she was calling out for her July 26, 2024 shift.

45.     However, Plaintiff did not call out for her July 26, 2024 shift, and in fact, she was terminated before she even had a chance to report for her shift on July 26, 2024.

46.     Therefore, Defendant terminated Plaintiff based on a false assumption and failed to even contact Plaintiff to confirm whether she was calling out of work on July 26, 2024 before abruptly terminating her.

47.    Defendant's shifting and contrived reasons for terminating Plaintiff's employment are completely pretextual and were simply used as a means to conceal their true discriminatory/retaliatory motive for terminating her employment.

**First Cause of Action**
**Violations of Title VII**
**([1] Race Discrimination & [2] Retaliation)**

47.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

48.    Plaintiff believes and therefore avers that her race was a motivating or determinative factor in making the decision to terminate her employment.

49.    Plaintiff believes and therefore avers that Defendant terminated her in retaliation for complaining of racial discrimination.

50.    Defendant's actions as aforesaid constitute violations of Title VII.

**Second Cause of Action**
**Violations of Section 1981**
**([1] Race Discrimination & [2] Retaliation)**

51.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52.    Plaintiff believes and therefore avers that her race and/or her complaints of racial discrimination was a determinative factor in Defendant's decision to terminate her employment.

53.    Defendant's actions as aforesaid constitute violations of Section 1981.

**Third Cause of Action**
**Violations of the PHRA**
**([1] Race Discrimination & [2] Retaliation)**

54.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8

55.    Plaintiff re-asserts and re-alleges each and every allegation as set forth in Plaintiff's First Cause of Action, as such actions constitute identical violations of the Pennsylvania Human Relations Act.

**Fourth Cause of Action**
**Violations of Title VII**
**(Retaliation)**

56.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57.    Plaintiff believes and therefore avers that Defendant terminated her in retaliation for complaining of sexual harassment.

58.    Defendant's actions as aforesaid constitute violations of Title VII.

**Fifth Cause of Action**
**Violations of the PHRA**
**(Retaliation)**

59.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

60.    Plaintiff re-asserts and re-alleges each and every allegation as set forth in Plaintiff's Fourth Cause of Action, as such actions constitute identical violations of the Pennsylvania Human Relations Act.

**Sixth Cause of Action**
**Violations of Title VII**
**(Religious Discrimination)**

61.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

62.    Plaintiff believes and therefore avers that she was terminated for her religion/religious practices.

9

63.     Defendant's actions as aforesaid constitute violations of Title VII.

**Seventh Cause of Action**
**Violations of the PHRA**
**(Religious Discrimination)**

64.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

65.     Plaintiff re-asserts and re-alleges each and every allegation as set forth in Plaintiff's Sixth Cause of Action, as such actions constitute identical violations of the Pennsylvania Human Relations Act.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and is to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.     Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C.     Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:    _____
Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
akarpf@karpf-law.com
(215) 639-0801

Dated: February 11, 2026